SNIPES v. SNIPES

[118 N.C. App. 189 (1995)]

———

LINDA L. SNIPES, now LINDA LASHLEY, Appellant v. JOHN R. SNIPES, Appellee

No. 925DC1301

(Filed 21 March 1995)

1. **Divorce and Separation § 415 (NCI4th)— child support agreement—incorporation in court order—failure of plaintiff to fulfill obligation—no entitlement to arrearages**

    Because plaintiff did not abide by her own obligations under a judgment which incorporated the parties' child support agreement, in particular the provision requiring that she give proper and timely notice of child support increases based on the consumer price index to the clerk of court, she cannot now be heard to complain of any alleged arrearage for the years she did not give notice or to assign as error the court's failure to order payment thereof.

    **Am Jur 2d, Divorce and Separation § 1075.**

    **Court's power to modify child custody order as affected by agreement which was incorporated in divorce decree. 73 ALR2d 1444.**

    **Divorce: power of court to modify decree for alimony or support of spouse which was based on agreement of parties. 61 ALR3d 520, sec. 1.**

    **Divorce: power of court to modify decree for support of child which was based on agreement of parties. 61 ALR3d 657, sec. 1.**

2. **Divorce and Separation § 417 (NCI4th)— child support increases—notice to clerk of court—increases not past due child support**

    Plaintiff's act of notifying the clerk of court in January 1992 of claimed increases in child support affecting calendar years

through 1991 did not cause the alleged increased amounts to become past due child support and thus did not cause her right to payment to be vested at the time of the 3 August 1992 hearing, since, absent issuance of a court order directing increased payments following plaintiff's compliance with the terms of the judgment, the alleged arrearage affecting calendar years through 1991 did not accrue and thus was not vested.

**Am Jur 2d, Divorce and Separation § 1081.**

**3. Divorce and Separation § 435 (NCI4th)— child support order—automatic increase based on consumer price index—order void**

The provision of a judgment which ordered automatic child support increases based on the consumer price index was void because it gave no consideration to the needs of the child or the means or abilities of the parties.

**Am Jur 2d, Divorce and Separation §§ 1082-1088.**

Appeal by plaintiff from judgment entered 7 August 1992 by Judge Elton G. Tucker in New Hanover County District Court. Heard in the Court of Appeals 28 October 1993.

*Robert U. Johnsen for plaintiff-appellant.*

*Shipman & Lea, by James W. Lea, III, for defendant-appellee.*

JOHN, Judge.

Plaintiff contends the trial court erred by denying her motion to adjust and increase the amount of defendant's monthly child support obligation. We disagree.

Pertinent facts and procedural information are as follows: Plaintiff Linda Lashley (Linda) and defendant John Snipes (John) were previously married and had one child, John R. Snipes, Jr. (Jr.), born 17 March 1981. The parties eventually separated, entering into a "Separation Agreement and Property Settlement" (the Agreement) on 19 February 1987. Linda was given primary custody of Jr., and John agreed to pay the sum of $523.00 each month for Jr.'s support beginning 1 April 1987. The Agreement also specified:

that on the anniversary date of this agreement, this child support payment shall be increased by a percentage equal to the increase, if any, in the consumer price index as published by the

Department of Labor and existing on December 31, of the preceding year. Wife shall notify the Clerk of Court of the increase each January and the new figure for support shall be entered on the Court's records.

The parties agreed John's monthly child support payments were to be distributed to Linda by the New Hanover County Clerk of Superior Court. In furtherance of this arrangement and contemporaneously with execution of the Agreement, John filed with the Clerk a "Statement Authorizing Entry of Judgment by Confession" pursuant to N.C.R. Civ. P. 68.1 (1990).

Thereafter, the District Court entered Judgment by Confession (the Judgment) on 27 February 1987, incorporating in substance the entirety of the parties' child support arrangement and providing in relevant part as follows:

IT IS ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. That the defendant shall pay through the Clerk of Court to the plaintiff the sum of $523.00 per month to be used for the support and maintenance of their minor child, John R. Snipes, Jr., born March 17, 1981, and the sum shall be paid as follows:

The sum of $523.00 per month beginning on the 1st day of April, 1986 [sic] and continuing thereafter in consecutive payments every month of a like amount until such time as plaintiff notifies the Clerk of a change in the amount of the support obligation, said sum shall change according to a percentage equal to the increase, if any, in the consumer price in[dex] as published by the Department of Labor and existing on December 31 of the preceding year. In January of each year plaintiff shall notify the Clerk of any increase due as a result of an increase, if any, in the consumer price index as published by the Department of Labor and existing on December 31 of the preceding year. Defendant shall continue to make monthly support payments until the minor child . . . shall attain the age of eighteen (18) years, or, if the minor child is still in primary or secondary school at the time he attains the age of eighteen (18) years, until the minor child graduates, ceases to attend school on a regular basis, or reaches the age of twenty (20), whichever comes first . . . .

John subsequently made $523.00 child support payments into the Clerk's office each month, commencing 1 April 1987 and continuing until April 1992 without interruption.

SNIPES v. SNIPES

[118 N.C. App. 189 (1995)]

On 16 March 1988, Linda notified the Clerk of Court by letter of a 4.4% increase in the consumer price index (C.P.I.). Her letter included this paragraph:

> Effective February 19, 1988, please be advised that the monthly child support payment for John R. Snipes, Jr. (Jon-Jon) should increase by 4.4%, or $23.01, making the total monthly allotment $546.01.

No increase was noted in the court's records, however, and John continued to pay $523.00 per month. Linda accepted that sum for nearly four years without advising the Clerk of additional annual increases in the C.P.I. In addition, the record reflects no objection by Linda to continuation of the $523.00 monthly payments.

By letter dated 31 January 1992, Linda provided the Clerk with C.P.I. increases for the years 1988 through 1991 as well as the sum she calculated should actually have been paid by John. Specifically, she stated that in 1988, the C.P.I. increase was 4.4%; in 1989, 4.4%; 1990, 4.6%; and in 1991, 6.1%. The letter also contained an express waiver by Linda of the increase allegedly due for 1988, but claimed John should have paid $546.01 for each month in 1989; $570.03 per month in 1990; and $604.80 monthly in 1991.

Again no notation was subsequently made in the court's records indicating an increase in John's child support obligation, nor was he directed to pay any greater monthly amount. On 3 April 1992, Linda filed a Motion in the Cause requesting adjustment of John's child support obligation so as to reflect computation according to the formula set out in the Judgment. Specifically, she sought "adjust[ments] and increase[s] for each year since 1987" on the grounds that although she had informed the Clerk of the C.P.I. increases, she "ha[d] been unsuccessful in implementing increases . . . by this means."

John subsequently requested "amendment" of the Judgment by a Motion in the Cause filed 27 May 1992, alleging the provision for automatic increases in his child support obligation was void as against public policy. He further sought issuance of an order establishing his future obligation by reference to the North Carolina Child Support Guidelines (the Guidelines).

In his 10 June 1992 response to Linda's Motion in the Cause, John reiterated his contention that the child support increase provision of the Agreement (upon which the Judgment was based) was void as against public policy. He further claimed Linda should be equitably

**SNIPES v. SNIPES**

[118 N.C. App. 189 (1995)]

estopped from requesting back child support because she had failed to comply with certain notice requirements provided in the Judgment. Additionally, by "countermotion," John asserted that his inability to pay the greater amount of child support sought by Linda constituted a substantial change in circumstances warranting a modification of the Judgment.

Hearing on the three motions was held 3 August 1992. Ultimately, the trial court granted John relief from the Judgment, and allowed his motion requesting that his child support obligation be established in accordance with the Guidelines, calculating the amount thereunder as $506.00 each month beginning 1 September 1992. Linda's motion for modification was expressly denied, as was her prayer to recover the difference between what she alleged John owed and what she had actually received.

The court's order, from which Linda's appeal is taken, includes the following pertinent findings of fact and conclusions of law:

FINDINGS OF FACT

. . . .

3. The aforesaid Separation Agreement and Property Settlement provided . . . for an increase in the amount of support on the first anniversary date of this agreement and on each anniversary thereafter by reference to the Consumer Price Index as published by the Department of Labor.

4. The aforesaid provision as to child support was reiterated in a Statement Authorizing Entry of Judgment by Confession executed by the Defendant on February 19, 1987, and a Judgment by Confession which essentially restated the aforesaid agreement of the parties concerning child support and increases thereto was signed by the undersigned Judge and entered on February 27, 1987.

5. The aforesaid Judgment by Confession was entered by this Court without actual hearing by the Court to determine the needs of the child or the abilities of the parties to provide for those needs.

. . . .

CONCLUSIONS OF LAW

. . . .

2. This Court is not bound by the terms and provisions of the agreement of the parties as contained in the Separation Agreement and Property Settlement and the Statement executed by the Defendant and the Judgment by Confession entered herein because the same do not meet the requirements as set forth by the Court of Appeals of North Carolina in Falls v. Falls, 278 S.E.2d 546 (1981) and specifically, said Judgment did not contain the provisions set forth at page 556 thereof.

. . . .

5. Defendant is not in arrears in his obligation to pay child support.

[1] Linda's sole argument is that the trial court erred by failing to enforce the Judgment which she contends entitled her to certain increases in child support *prior to* the 3 August 1992 hearing. She does not contest the amount of child support ordered derived by application of the Guidelines. She also does not dispute the legal theory underlying the court's refusal to allow prospective automatic annual increases in child support by reference to C.P.I. statistics; she therefore has not appealed the court's determination with respect to payments required of John in the future.

Instead, Linda's challenge to the trial court's order is based exclusively upon her contention that the Judgment constituted *res judicata* concerning increases in child support allegedly due before the 3 August 1992 hearing. As stated in Linda's appellate brief: "[P]laintiff's appeal is directed . . . at the effect of the Judgment by Confession entered in 1987 . . . and the trial court's ability to retroactively nullify its effect." Stated otherwise, "[t]he plaintiff asks for that which the law has already given her and cannot now take away." *See* Appellant's Brief, at 9, 12.

The rule allowing for judgments by confession is N.C.R. Civ. P. 68.1, which provides in pertinent part as follows:

(a) *For present or future liability.*—A judgment by confession may be entered without action at any time in accordance with the procedure prescribed by this rule. Such judgment may be for money due or for money that may become due. Such judgment may also be entered for . . . support of minor children.

. . . .

(e) *Force and effect.*—Judgments entered in conformity with this rule shall have the same effect as other judgments except that no judgment by confession shall be held to be res judicata as to any fact in any civil action except in an action on the judgment confessed. When such judgment is for . . . support of minor children, the failure of the defendant to make any payments as required by such judgment shall subject him to such penalties as may be adjudged by the court as in any other case of contempt of its orders.

Linda correctly notes that upon entry of the Judgment incorporating the Agreement, she and John were constrained to seek relief from the court. *See Walters v. Walters*, 307 N.C. 381, 385-86, 298 S.E.2d 338, 341-42 (1983). Linda relies on Rule 68.1(e) above for her subsequent assertion that John was bound to pay child support as required in the Judgment until modified prospectively as a result of the court's order. *See* Appellant's Brief, at 6 ("By inference, a confession of judgment has *res judicata* effect as to any finding of fact contained therein in an action on the judgment confessed."). Therefore, she continues, the trial court exceeded its authority by implicitly finding the automatic increase provision to be void as against public policy and thus failing to enforce it.

However, even accepting *arguendo* Linda's questionable contention that the provision calling for annual increases in child support is properly considered a "fact" under Rule 68.1(e) such that *res judicata* by implication would apply, we decline to upset the trial court's ruling denying her motion to collect "arrearages."

First, a study of the language contained in the Judgment reveals no support for Linda's assertion that the provision for child support increase is automatic or self-executing. Pursuant to the parties' Agreement, as included in the Judgment, "[i]n *January of each year* plaintiff shall notify the Clerk of any increase due." (Emphasis added). It is undisputed that Linda first notified the Clerk of an increase in *March* 1988, well past the time provided in the Judgment. This notice was thus ineffective to activate an increase for 1988, and the Clerk properly did not alter John's support obligation. Moreover, although John continued to remit only the sum of $523.00 each month, Linda raised no objection to the failure to implement a higher payment for 1988 and in her 31 January 1992 letter to the Clerk waived any increase for that year.

Linda also failed to provide notice of an increase under the C.P.I. at any time during 1989, 1990 and 1991, much less in January of those years, and neglected to interpose any objection to the amount she received. Upon such failure and under the terms of the Judgment, no increase was activated for those years. Because Linda did not abide by her own obligations under the Judgment—in particular the provision requiring that she give proper and timely notice of increases to the Clerk, she cannot now be heard to complain of any alleged arrearage for those years or to assign as error the court's failure to order payment thereof. *See, e.g., First Union Nat. Bank v. Naylor*, 102 N.C. App. 719, 723, 404 S.E.2d 161, 163 (1991) (wife's duty to pay note owed to husband was a condition precedent under the parties' separation agreement to husband's duty to assume marital debts).

[2] Next, we also reject in similar vein Linda's argument that upon her act of notifying the Clerk of Court in January 1992 of claimed increases affecting calendar years through 1991, the alleged increased amounts became past due child support and her right to payment was thus vested at the time of the 3 August 1992 hearing. *See* N.C. Gen. Stat. § 50-13.10(a) (1987) ("Each past due child support payment is vested when it accrues and may not thereafter be vacated, reduced, or otherwise modified in any way for any reason . . . ."). Absent issuance of a court order directing increased payments (following Linda's compliance with the terms of the Judgment), the alleged arrearage affecting calendar years through 1991 did not accrue and thus was not vested. *See, e.g., Mackins v. Mackins*, 114 N.C. App. 538, 542-43, 442 S.E.2d 352, 355 (payments accrue and vest upon becoming "due and payable" pursuant to a child support *order*), *disc. review denied*, 337 N.C. 694, 448 S.E.2d 527 (1994); *see also Van Nynatten v. Van Nynatten*, 113 N.C. App. 142, 145-46, 438 S.E.2d 417, 418-19 (1993).

[3] Finally, in his motion in the cause seeking "amendment" of the Judgment, John contended the provision therein calling for automatic increases in his child support obligation was void as against public policy. The trial court did not rule directly on the issue and, for purposes of this opinion, we consider such a specific holding unnecessary as well. However, we agree with the court's implicit determination that the foregoing provision was void *ab initio* and therefore unenforceable.

In the case of *Falls v. Falls*, 52 N.C. App. 203, 278 S.E.2d 546, *disc. review denied*, 304 N.C. 390, 285 S.E.2d 831 (1981), this Court

examined the propriety of the use of annual automatic increases in child support orders. Following a contested hearing and apparently on its own motion without request from the parties, *id.* at 215, 218, 278 S.E.2d at 555, 556, the trial court entered an order specifying that the father's monthly child support payments:

> [F]or each child shall be increased for the succeeding 12 months by such amount, if any, as may be necessary to keep the level of the payments, during those succeeding 12 months at a consistent level by comparison of the United States Consumer Cost of Living Index for the month of September, 1980, for the same month of the year 1981 and each year thereafter . . . it being the intent of the Court that said payments be increased annually, consistent with the increase of the cost of living, as reflected by the official statistics of the United States . . . .

*Id.* at 216, 278 S.E.2d at 555.

On appeal, after acknowledging several potentially worthwhile attributes of a system whereby child support payments escalate automatically based upon the Cost of Living Index, this Court agreed with a majority of other jurisdictions and commentators which reject such formulas when they "assume[] that no change will occur in other factors affecting child support." *Id.* at 216-18, 278 S.E.2d at 555-56 (italicized in original). We pointed out that the general reliability of C.P.I. statistics has not been established, and then disapproved "the attempt by the trial court to set up a self-adjusting, self-perpetuating support order . . . because the court ignored the relevant and changing circumstances surrounding the children and the parties," *id.* at 218, 278 S.E.2d at 556 (emphasis deleted), in contravention of North Carolina's statutory and case law. *Id.* at 219, 278 S.E.2d at 557. Specifically, we stated "[t]o put in effect an automatic increase in the future based on one factor, a cost of living index whose [sic] reliability is totally unsubstantiated by the record, violates G.S. 50-13.4(c) . . . ." *Id.*

Thereafter, we expressed our opinion that:

> an acceptable annual adjustment formula based on the percentage change in a generally accepted and accurate index of the cost of living should include, at a minimum:
>
> 1. Provisions focusing not only on the needs of the child, but also on the relative abilities of the . . . parent[s] to pay;

2. Provisions stating that if the non-custodial parent's income decreases, or increases by a lesser percentage than the percentage change in the index, then the child support payments shall decrease or increase by a like or lesser percentage;

3. Provisions stating that if the parties are unable to determine or stipulate to the correct adjustment, either party may request that the court determine the same; and

4. Provisions allowing either party to petition the court for modification due to a substantial and continuing change of circumstance.

*Id.* at 220, 278 S.E.2d at 557-58 (citations omitted).

Plaintiff correctly points out that the *Falls* opinion contains no holding that provisions for automatic cost-of-living increases are void as against public policy, and bolsters her position with the statement in *Falls* that "we do not seek to discourage parties who, 'with a spirit of fairness and concern for their children, stipulate to a COLA formula for child support [since such a stipulation would seem to minimize] the risks of yearly resistance to increased support, with attendant legal expense and animosity . . . .' " *Id.* at 221, 278 S.E.2d at 558 (quoting *In re Stamp*, 300 N.W.2d 275, 279 (Iowa 1980)).

However, the foregoing language from the *Falls* opinion was specifically interpreted in our subsequent case of *Frykberg v. Frykberg*, 76 N.C. App. 401, 333 S.E.2d 766 (1985) as referring only to agreements between parties which have *not* been incorporated into court orders or judgments. *Id.* at 409-10, 333 S.E.2d at 771. In *Frykberg*, the parties entered into a separation agreement providing for adjustment in the amount of child support by reference to the C.P.I., with increases to occur on a yearly basis. *Id.* at 404-05, 333 S.E.2d at 769. Thereafter, the trial court entered a consent judgment which provided, *inter alia*, that the agreement was "the operative document governing [the parties'] rights and liabilities arising from their former marital relationship," but that it was "not necessary that [the agreement] be incorporated as part of this Court Order." *Id.* at 402, 333 S.E.2d at 767.

Claiming her former husband had breached certain provisions of their separation agreement (which was "not . . . incorporated as part of th[e] [consent judgment]"), the plaintiff wife in *Frykberg* sought specific performance of the agreement, including the section calling for automatic annual increases based upon the C.P.I. The trial court,

relying on language similar to that in the *Falls* decision, held that particular provision to be unenforceable and void as a matter of public policy. *Id.* at 407, 333 S.E.2d at 770.

The consent judgment at issue in *Frykberg* was entered in 1981—prior to the decision of our Supreme Court in *Walters v. Walters*, 307 N.C. 381, 298 S.E.2d 338 (1983), which held that "whenever the parties bring [a] separation agreement[] before the court for the court's approval," the agreement will thereafter be treated not as a contract but rather as a "court ordered judgment[]." *Id.* at 386, 298 S.E.2d at 342. In the *Frykberg* appeal, this Court observed that "[w]ere *Walters* applicable to the facts of the instant case, we would have no difficulty in affirming the order appealed from." *Frykberg*, 76 N.C. App. at 408, 333 S.E.2d at 771. However, because the holding in *Walters* was not to be applied retroactively, *Walters*, 307 N.C. at 386, 298 S.E.2d at 342, the *Frykberg* Court determined that even though the parties had brought the separation agreement before the court for approval, the agreement was not incorporated into the consent judgment, but was simply a contract between the parties. *Frykberg*, 76 N.C. App. at 408-09, 333 S.E.2d at 771.

We then examined the trial court's conclusion that the condition providing automatic child support increases based upon the C.P.I. was void in that it gave no consideration "to the needs of the child []or the means or abilities of the parties," *id.* at 407, 333 S.E.2d at 770, and remarked "[i]t was precisely for this reason" that the *Falls* court "refused to sustain a similar provision in a *court order* for child support." *Id.* at 409, 333 S.E.2d at 771. Noting the language from *Falls* quoted above, however, the *Frykberg* Court concluded the trial court had erred because the agreement at issue had not been incorporated into the court's judgment. *Id.* at 409-10, 333 S.E.2d at 771. Specifically, we held "that the provision for automatic increases in child support as a function of the Consumer Price Index, contained in the contractual agreement of the parties and *not incorporated into the consent judgment*, is not void as against public policy," and was thus enforceable. *Id.* (emphasis added). In the case *sub judice*, the Judgment by Confession is indisputably a court "order." Further, plaintiff concedes in her appellate brief that the Judgment does not contain the *Falls* requirements noted above for a valid annual adjustment formula and that "the trial court improperly awarded annual increases in child support based upon the Consumer Price Index . . . ." *See* Appellant's Brief, at 9. Under the directives of *Falls* and *Frykberg*, therefore, the

provision of the Judgement by Confession herein ordering automatic child support increases based upon the C.P.I. was void.

This Court has repeatedly observed that "[i]f a judgment is void, it is a nullity," *Burton v. Blanton*, 107 N.C. App. 615, 616-17, 421 S.E.2d 381, 383 (1992) (citation omitted), and "establishes no legal rights and may be vacated without regard to time." *Allred v. Tucci*, 85 N.C. App. 138, 141, 354 S.E.2d 291, 294 (citation omitted), *disc. review denied*, 320 N.C. 166, 358 S.E.2d 47 (1987). Moreover, "[a] void judgment . . . binds no one and it is immaterial whether the judgment was . . . entered by consent." *Id.* at 144, 354 S.E.2d at 295 (citation omitted). The trial court thus did not err by refusing to enforce the Judgement by Confession provision directing automatic increases in child support based upon the C.P.I.

Affirmed.

Judges GREENE and MARTIN, John C. concur.